IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES POSTAL
SERVICE,

                                    Plaintiff,

        v.                                                    1:05-cv-2129-WSD

YELLOW PAGE DIRECTORY
PUBLISHERS, INC.,

                                    Defendant.

## ORDER

This matter is before the Court on Plaintiff United States Postal Service's

Motion for Preliminary Injunction [5], Defendant's Memorandum of Law in

Opposition to the Postal Service's Motion for a Preliminary Injunction [15],

Plaintiff's Reply Memorandum to Defendant's Memorandum of Law in Opposition

to the Postal Service's Motion for a Preliminary Injunction [16] and Defendant's

Response in Opposition to Motion for a Preliminary Injunction [17].

## I.      BACKGROUND

        A.      Procedural Background

On August 16, 2005, Plaintiff United States Postal Service ("USPS") filed its

Complaint for Injunctive Relief [1], Application for Temporary Restraining Order [2] and Motion for Preliminary Injunction.  The Application for Temporary Restraining Order was presented to the Court *ex parte* and a temporary restraining order was entered directing the USPS to detain certain of the Defendant Yellow Page Directory Publishers, Inc.'s ("Defendant") mail as described in the order while an administrative proceeding under 39 U.S.C. § 3005 was conducted in this matter.  (Aug. 16, 2005 Order [3].)[1]  A hearing on the preliminary injunction motion was scheduled by the Court for September 1, 2005.  At the request of the parties, the hearing was rescheduled for October 14, 2005 [9].  The parties agreed to extend the temporary restraining order pending a ruling on Plaintiff's preliminary injunction motion.

B.   <u>Factual Background</u>

This matter concerns the USPS's claim that Defendant is making false representations in connection with the sale of yellow pages advertising. Specifically, the USPS claims that Defendant is "conducting a scheme or device

---

[1] A copy of the Complaint filed in the Administrative Proceeding is attached as Exhibit 18 to the Declaration of Postal Inspector Jessica Hood dated August 16, 2005 ("Hood Decl.") [4].

for obtaining money or property through the mail by means of false representations, in violation of 39 U.S.C. § 3005." (Compl. ¶ 6.) Defendant does this, the USPS claims, by leading potential advertising purchasers to believe that: (i) Defendant is the publisher of the local telephone service provider's yellow pages directory; (ii) the potential advertiser had previously authorized the Defendant to list the potential advertiser in Defendant's telephone directory; and (iii) the directory in which the advertisement will appear is widely distributed to the general public. (Id.)

The facts are generally undisputed. The evidence submitted to the Court shows the manner in which Defendant operates its business. In a typical transaction, Defendant sent to a business a document entitled "Yellow Page Directory Listing Authorization Form" (the "Authorization Form"). (Exhibits introduced at the Oct. 14, 2005 hearing[1] ("Hearing Exs.") 3, 3A, 20, 30.) The form[2] is preprinted and the addressee's business name and address appear under the heading "Your Company Listing." (Hearing Ex. 3A.) In the upper left-hand

---

[1] The Government introduced at the hearing the exhibits attached to Postal Inspector Hood's declaration as well as several additional exhibits. In this Order the Court will cite to the hearing exhibits.

[2] There are slight variations in the forms used by the Defendant. The provisions discussed in this Order vary only slightly and the variations are not material.

3

corner is the familiar "walking fingers" logo under which appeared the words

"Yellow Pages."  (Id.)  The name "Yellow Page Directory Publishers, Inc." also

appeared in the upper left-hand corner.  (Id.)  An address such as  "2870 Peachtree

Rd., Ste. 157, Atlanta, GA  30305-9847"[3] was associated with the Yellow Page

Directory Publishers, Inc. name.  (Id.)  The Authorization Form also had printed on

it the term:  "Advertisers Listing #", after which was printed a specific number to

correspond to the business to whom the form was sent.  The Authorization Form

requested the recipient to put a check either in the box indicating the "Listing is

correct"[4] or "List with changes."  (Id.)  After checking the box, the recipient was

instructed to "(SIGN BELOW)."  (Id.)  If there were changes to be made, they

were to be indicated in section "2" entitled "Update Company Information Below."

(Id.)  Section 2 also included sections for "Yellow Page Heading," "SIC Code"

---

[3] The Authorization Forms appeared to originate out of one of five
Defendant's offices in Atlanta, Georgia, New York, New York, Chicago, Illinois,
Beverly Hills, California, and Los Angeles, California.  The USPS seeks to detain
Defendant's mail received only at the following specific addresses:  (1) 2870
Peachtree Road, Suite 157, Atlanta, GA 30305-9847; (2) 333 West North Avenue,
Suite 102, Chicago, IL 60610-9641; (3) 666 5th Avenue, PMB 332, New York, NY
10102-0001; (4) 264 S. La Cienega Blvd., Suite 1049, Beverly Hills, CA 90211-
3302; and (5) 10573 West Pico Blvd. PMB 335, Los Angeles, CA 90064-2333.

[4] In this case the recipient is a business in Cedartown, Georgia.  (Hearing
Ex. 3A.)

4

and "Phone Number" specific to the business.  (Id.)  At the bottom of section 2,

the following appeared in small print, all capitals:

> A free white page listing will be included with each yellow
> page listing of $293.00 billed semi-annually.
> This is a yellow page advertising solicitation not
> affiliated with AT&T or any local telephone company.
> See terms on reverse.  This is a solicitation.  This is
> not a bill or invoice.  Your company is under no obligation
> to pay the amount stated unless you accept this offer.
> Additional listings are $49.00 each.

(Id.)  Section "3" was next.  It began with red, capitalized language which read:

> Important:  Sign and print name below.  Detach and return
> bottom portion in envelope provided.  Or fax entire form
> to 1-800-758-2770.

(Id.)  Section 3 listed the recipient's telephone number, repeated the pre-assigned

"Advertisers Listing" number and the preassigned "Yellow Page Heading" for the

recipient business.  (Hearing Ex. 30.)  The section stated in large black all

capitalized letters:  "Note:  Form must be returned by [date inserted]."  (Id.)  At the

bottom right-hand corner was a line for the recipient to sign and another to print the

signor's name.  (Id.)  Just under these lines was a statement in small print which

reads:  "By signing above, company [agrees] to Yellow Page advertising described

herein, and terms on the reverse of this order form."  (Id.)

When the Authorization Form was sent to a business, it was not accompanied by a letter, brochure or other writing describing the directory intended to be published.  The mailing also did not include a sample page from the directory or other information informing the recipient of the nature, purpose or benefit of this directory and that Defendant was seeking to initiate an advertising relationship.

The reverse side of the Authorization Form contained four paragraphs. Included in the reverse side terms were the following representations:

> This is a solicitation for advertising in a nationwide
> yellow page directory that contains business listings
> and advertisements from companies throughout the
> country.  It is designed to assist companies, purchasing
> agents, consumers and all advertisers who wish to locate
> businesses in different states around the United States.
> The directories published by Yellow Pages Directory
> Publishers Inc. provide you with an inexpensive alternative
> to advertise in a classified yellow page directory
> and reach customers who are ready to buy.

(Hearing Ex. 30.)  The paragraph concluded with a disclaimer of an affiliation with AT&T or the local telephone company.  It stated that the solicitation was "for advertising in addition to any advertising that you may have in your local phone company's directory."  (Id.)  The fourth paragraph provided:

> The printed nationwide directory is distributed to all
> paid advertisers, chambers of commerce, purchasing

6

> agents, and other select business [sic] throughout
> the country.

(Id.)  This paragraph concluded with a limitation on liability for errors in the

information published.  (Id.)

When an Authorization Form was returned by a recipient business,

Defendant responded by sending an invoice for the listing indicating payment was

due "Upon Receipt," stating the business account number and directing:  "Make

Check Payable To:  Yellow Pages Publishers."  (Hearing Ex. 1.)  Payment was

directed to be sent to one of the Defendant's five offices.  A large arrow instructed

the business to "Sign Here."  (Id.)  Underneath the signature line in small type was

the following language:  "Signer authorizes advertising in the Yellow Page Directory

Business Directory and Internet Yellow Pages.  Authorization is granted to debit

signer Checking, Savings, or Credit Card used in payment of current notice and all

subsequent payment unless otherwise stated."  (Id.)

The address to which payment was to be sent was an address in one of the

five (5) cities where Defendant had rented a drop box at a United Parcel Service

Store or other mailbox business (the "drop boxes").  These drop boxes were

rented by Andrew Grant Miller, who used a South African passport and a "state-

issued ID card" to rent the boxes.  (Hearing Exs. 2, 4, 5, 6.)  The drop boxes were

listed in Defendant's name and located with an address in Las Vegas, Nevada, or,

in one case, in Johannesburg, South Africa.  (Id.)  The drop box  locations were

required to forward mail, including payments, received in the drop box to

Defendant at an address in Miami Beach, Florida.  (Testimony of Postal Inspector

Hood at October 14, 2005 hearing ("Hood Test.") at 22; Hood Decl. ¶¶ 6, 10, 11,

12, 13.)

      The USPS has determined that a large volume of mail was received at the

drop boxes assigned to Defendant and that the mail arrived in pre-printed envelopes

Defendant gave to businesses to use to pay Defendant's invoices.  (Hood Test. at

24; Hearing Exs. 1, 19, 30; Hood Decl. ¶¶ 6, 11, 12, 13.)

      The USPS also has learned through its investigation, including the service of

search warrants on Defendant's office in Miami, Florida, that Andrew Miller

operates Defendant with Charles R. Smith.  (Hood Test. at 34-35; Hearing Exs. 19,

20 (displaying Smith signature on form).)  Mr. Smith and classified directory

companies with which he has been affiliated have been named as defendants in at

least seven (7) actions in which claims of false representations in the sale of yellow

pages advertising have been asserted.  In these cases, Mr. Smith and his affiliated

companies either were found to have made false representations in advertising sales or they entered into consent orders to cease and desist from making false representations in yellow page advertising sales communications. (Hearing Exs. 9, 10, 12-17.) The false representations alleged in these actions were substantially similar to those asserted by the USPS here and in the Section 3005 Administrative Proceeding. (Hearing Ex. 18.)

The directory which the Defendant publishes is entitled the "National Business Yellow Pages." (Hearing Ex. 31.) It has white and yellow pages sections and is similar in size to a typical combined white and yellow pages directory for a small town. (Id.) The white pages portion of the directory is in strict alphabetical order. It is not separated by city or state. To find any listing in it one must have the correct title of a business. That is, if you are looking for a business in a particular city, the only way to find it is by reviewing every listing in the white pages section of the directory. The yellow pages portion also is listed alphabetically by heading. Listings under a heading are listed alphabetically by state. There are a paucity of listings in the directory. For example, although Georgia has a population of over 8 million people and a well-developed healthcare services industry, under the heading "Hospitals" not a single Georgia hospital is listed. Under the heading

9

"Pizza," only two pizza businesses in the entire state are listed.[5]

Under the heading "Paralegal," there is one listing, and that one is in Ohio. The only "Mail Box-Rental" business is, interestingly, in Las Vegas, Nevada.  The directory has virtually no useful value or utility.  Defendant's evidence indicates that only 29,012 directories were mailed on March 31, 2005.[6]  (Hearing Ex. A.)  That is, distribution did not even equal the total number of businesses listed in the directory, indicating that the directory is not distributed to other than those who advertise in it. (Id.)  Defendant is not listed in the directory.  Defendant also did not have an Internet Yellow Pages Website in 2005 and apparently does not now.  (Hearing Tr. at 58.)

Based on a review of documents seized as a result of search warrants issued to the USPS, it appears that Defendant generated revenues of approximately $10 million since the end of 2003.  (Hood Test. at 32-33.)

---

[5]  In the Atlanta yellow pages directory published by BellSouth there are over thirty-five hospitals listed for the Atlanta area, and over 100 listings under "Pizza."

[6]  This is consistent with a document introduced at the hearing indicating only 30,000 copies of the directory were printed.  (Hearing Exs. A2, A4.)

**II.     DISCUSSION**

The USPS has instituted a proceeding under 39 U.S.C. § 3005, alleging

Defendant is conducting a scheme or device for obtaining money or property

through the mail by means of false representations.  ("Section 3005 Proceeding,"

Hearing Ex. 18.)  In the Section 3005 proceeding, the USPS alleges that Defendant

sends mailings which falsely represent that:  (a) Defendant is the publisher of the

phone directory or "yellow pages" customarily supplied to all telephone

subscribers in the recipients' area; (b) recipients of Defendant's solicitations have

previously authorized a business listing in defendant's telephone directory; and (c)

Defendant's directory has a wide distribution that reaches the general public.

(Compl. ¶ 6.)

The USPS brings this action pursuant to 39 U.S.C. § 3007 for preliminary

injunctive relief.  Section 3007(a)(1) provides:

> In preparation for or during the pendency of proceedings
> under section 3005, the Postal Service may . . . apply to
> the district court in any district in which mail is sent or
> received as part of the alleged scheme [or] device . . . for
> a temporary restraining order and preliminary injunction
> under the procedural requirements of rule 65 of the
> Federal Rules of Civil Procedure.

Section 3007(a)(2)(A) continues:

> Upon a proper showing, the Court shall enter an order which shall --
>
> (i) remain in effect during the pendency of the statutory proceedings, any judicial review of such proceedings, or any action to enforce orders issued under the proceedings; and
>
> (ii) direct the detention by the postmaster, in any and all districts, of the defendant's incoming and outgoing mail, which is the subject of the proceedings under section 3005.

"A proper showing under this paragraph shall require proof of a likelihood of success on the merits of the proceedings under section 3005."  39 U.S.C. § 3007(a)(2)(B).

In a Section 3005 proceeding, whether a person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representation must be shown "[u]pon evidence satisfactory to the Postal Service . . . ."  39 U.S.C. § 3005(a).  The question is "whether the mails are being used to project a scheme . . . by false and fraudulent statements."  Farley v. Heininger, 105 F.2d 79, 84 (D.C. Cir. 1939), cert. denied, 308 U.S. 587 (1939).  In evaluating likelihood of success in a § 3005 proceeding, it is not necessary to show that members of the public actually were deceived.  DynaQuest Corp. v. U.S.

Postal Serv., 12 F.3d 1144, 1147 (D.C. Cir. 1994).  The question is whether

defendant's representations -- express or implied -- are false from the perspective

of the ordinary, unsuspecting reader.  Donaldson v. Read Magazine, Inc., 333 U.S.

178, 188 (1948) (interpreting language of predecessor statute to § 3005, the

language of which is nearly identical to § 3005); DynaQuest Corp., 12 F.3d at 1146;

U.S. Postal Serv. v. Allied Treatment, Inc., 730 F. Supp. 738, 739 (N.D. Tex.

1990).  The representations must be considered as a whole, and considered for

what they expressly state and impliedly represent.  Allied Treatment, Inc., 730 F.

Supp. at 739.  "A court must consider the implications of an advertisement

because, if it is designed to deceive the reader, an advertisement may be completely

misleading even if every sentence separately considered is literally true."  Id.

(quotation and citation omitted).

        This particular matter has to be considered in the context of the yellow pages

publication industry.  Both parties acknowledge that the "walking fingers" logo and

the term "yellow pages" are not protected trademarks and can be used by other

than the local wire-line telephone company.  Thus their use alone cannot mislead

one into believing that a company is representing itself to be a telephone company

telephone book publisher.[7]  But, use of the marks may, with other elements, lull
businesses into believing that Defendant's directory is associated with or published
by the local company or may mislead a customer into believing Defendant's
directory is comparable to the local telephone company's yellow pages publication.

The Court has considered Defendant's communications with businesses to
generate revenues for promised yellow pages advertising.  Specifically, the Court
carefully has evaluated the Defendant's "Yellow Page Directory Advertising Listing
Authorization Form" and what these forms communicate to the recipient.  The
Court has not only evaluated the language of the Authorization Form, but also its
design and layout and what it effectively communicated to the form recipient.  The
Court necessarily concludes from its analysis that the USPS is likely to show in the
pending Section 3005 proceeding that Defendant made misrepresentations to
recipients with whom Defendant communicated.

The representations made operate at two levels.  For one group of recipients
the form as designed operates to lead them to believe they are simply continuing the

---

[7] Inspector Hood mistakenly believed use of these logos by Defendant
constituted a misrepresentation that it was the telephone company's yellow pages
publisher.

14

advertising relationship they have with a yellow pages telephone directory publisher. A second group of recipients, those who read the Authorization Form more closely, are led to believe Defendant intends to publish a national directory that is comparable in content, development, appearance, completeness and distribution as an established yellow pages directory, but that Defendant's directory is national in geographic scope.  The Court considers the deceptiveness of Defendant's representations at these two levels.

      A.    <u>Confirming an Existing Advertising Relationship</u>

The misrepresentations made by Defendant are clever and subtle.  Viewing the Authorization Form in its entirety, it is designed to be interpreted by some recipients as a confirmation of the business's existing yellow pages advertising program with the company with which it currently advertises.  That is, a recipient is led to believe the form simply is confirming an existing advertising relationship, not a solicitation to enter into a new one.  The Authorization Form contains specific elements tending to cause one to believe there was a past business relationship. The name of the form itself is misleading.  Defendant sends the form without any previous contact with the business, yet it seeks authorization to publish specific information as if a relationship was existing.  The form represents to the business

15

there is an existing company listing when it states "Your Company Listing."  It sets out a unique "Advertisers Listing #" for the business.  It asks the business to confirm if the listing is correct or whether changes are to be made, implying the listing already exists.  A box requests the business to "Update Company Information," implying there is a preexisting listing to "update."  The form provides specific "Yellow Page Heading," "SIC Code" and "Phone Number" information unique to the recipient business when there has not been a previous conversation with the business, again misleading the recipient business to believe they simply are confirming renewal of an existing relationship.[8]  While Defendant refers to the form as a "solicitation," noting that term is embedded in the small print box under Section "2" and on the back of the sheet terms, Defendant does not clearly disclose where Defendant obtained the "listing" information on the form that was sent nor is there a clear and conspicuous disclosure that Defendant is asking the recipient business to consider a new advertising program.  From the Court's perspective, the content of the Authorization Form, its formatting and appearance

---

[8]  The Court believes further discovery may well disclose that the information about businesses which is printed on Authorization Forms sent to businesses is extracted from directories published by other companies.

16

are deceptive to those who have an existing advertising program with a yellow pages publisher.  That these forms are misleading is evidenced by those who have complained they were misled into believing this was a form confirming an existing advertising program in a yellow pages directory in which they had advertised previously.  (Hood. Decl. ¶¶ 4, 15, 16, 17; Hood Decl. Exs. 1, 7, 8.)

The invoice process similarly perpetrated the impression the Authorization Form was to confirm an existing yellow pages advertising program, not to solicit entry into a new one.  When an Authorization Form was returned an invoice was sent to the transmitting business.  The process was set up to appear to be a simple, routine confirmation of an existing business relationship.

Defendant argues that the "walking fingers" logo and the name "yellow pages" are not protected, are permitted to be used in their communications and thus the USPS's reliance upon the marks to support its argument that Defendant made false representations is misplaced.  The Court acknowledges that these marks are not protected, but disagrees that they cannot be misused in a misleading way. While the Defendant seeks for the court to compartmentalize its review -- to look at specific parts of this form in isolation -- the court is obligated to consider the Authorization Form and Defendant's follow-up communications as a whole to

determine if they constitute false representations, expressly or impliedly.  See <u>Allied</u> <u>Treatment, Inc.</u>, 730 F. Supp. at 739.  Even though the "walking fingers" and yellow pages marks are not protected, when used on the Authorization Form with the preprinted, customized information for each recipient business, what results is a communication that is misleading because it would cause an ordinary, unsuspecting reader, especially one with an existing yellow pages advertising program, to believe the form simply continues an existing advertising program, inviting the business to confirm its current listing is correct, and if not, to make changes to it.  The form in particular appears purposefully fashioned to avoid the impression that Defendant seeks to establish or initiate a business relationship and is intended instead to be interpreted as confirming the continuation of an existing one.  That the communication appears to be sent from local addresses rather than from Defendant's offices in Miami, Florida, would lull the recipient into believing they are dealing with their regular, local yellow pages advertising publisher.

      B.    <u>More Careful Readers</u>

      A second set of recipients is misled at a different level.  These businesses likely will read the Authorization Form more closely and consider it as a solicitation for the business to consider advertising in a yellow pages directory with a national

scope and distribution.  This group is misled because they are knowledgeable about the value of yellow pages directory advertising.  That is, Defendant expects these businesses to believe that its directory is a well-developed, credible, national yellow pages directory, when it is nothing of the sort.

The yellow pages advertising market is mature and well known to the advertising and consuming public.  Those that advertise in and use these directories know the directory as a valuable tool to identify particular providers of goods and services in a particular line of business.

For example, when a user wants to find a plumber in Atlanta, Georgia, he or she knows a large number of options will be available in the locally published directories.  It is this characteristic of yellow pages directories -- their well-developed headings and well-developed listings under headings so as to identify providers of goods and services to those seeking them -- that makes yellow pages directory advertising attractive to businesses and worth the cost to advertise in them.  Any publisher of a directory understands a viable yellow pages directory must have a developed listing structure and business headings because they know that is what users and the public expect.  The public specifically expects a variety of display advertising.  Defendant created among this group of recipients of the

19

Authorization Form the impression Defendant was offering a directory comparable

to local yellow pages publications.  In fact, Defendant represented its directory as

an "inexpensive alternative" to a "classified yellow pages directory."  (Hearing Ex.

30.)  This comparison implied that Defendant's directory had well-developed

headings and listings, but with a national scope and distribution.  Defendant makes

representations expressed and implied to this effect, knowing the directory it

intends to publish will have little, if any, development, and doubtful, if any, utility to

users.  Defendant represented:

> The directory is "a nationwide yellow page directory that
> contains business listings and advertisements from
> companies throughout the country."

> "It is designed to assist companies, purchasing agents,
> consumers and all advertisers who wish to locate
> businesses in different states around the United States."

> The directory is "[a]n inexpensive alternative to
> advertis[ing] in a classified yellow page directory and
> reach[ing] customers who are ready to buy."

> "The printed nationwide directory is distributed to all paid
> advertisers, chambers of commerce, purchasing agents,
> and other select business [sic] throughout the country."

(Hearing Ex. 3A.)  Defendant represented further:

20

> "[Y]our listing will also be included in Yellow Page
> Directory Publishers' Internet Yellow Page Directory,
> which will be operational in 2005."

(Id.)  These descriptions are discredited completely by what the Defendant actually

published.  Even a cursory review of Defendant's "National Business Yellow Pages

Directory" shows it is incomplete and useless to users and devoid of  commercial

benefit to listed businesses.  To compare it as an alternative to the locally published

directory strains credibility.  The paucity of listings is disturbing.  It is distributed

to, at most, 30,000 people, a number that is fewer than the number of listings in the

directory and conspicuously short of the broad national distribution promised.[9]  An

internet directory was not in existence in 2005, nor is it now in existence.  That the

Defendant's directory is not a credible publication is evidenced by the fact that

Defendant is not even listed in it.  The necessary conclusion the Court draws is that

Defendant developed this scheme with an intent to defraud businesses.

---

[9] Defendant's Exhibit B further illustrates the misrepresentations Defendant
made.  This document instructs Defendant's employees what representations they
are to make to people who call Defendant's offices.  Regarding distribution,
employees were instructed to say:  "Nationwide coverage with directories sent to all
advertisers, various corporate offices, hotels and motels, chambers of commerce
and other places of public interest nationwide."

C.   <u>Other Evidence of Intentional Deception</u>

There is other persuasive evidence that Defendant intended to mislead recipients of its Authorization Forms.  The execution of a search warrant on Defendant's business premises in Miami, Florida (where recipient funds are transmitted), disclosed that Charles R. Smith, along with Andrew Miller, control Defendant and its business.  Mr. Smith and his companies have been charged in a variety of proceedings with making false representations of the sort alleged here.  In these previous proceedings, Mr. Smith either admitted making false representations or was found to have done so.  He is well aware that misrepresentations of the kind alleged here are illegal.

Furthermore, Defendant's Miami office was operated in such a way as to avoid detection of the nature of Defendant's operation or at least to discourage questions about it.  A search of Defendant's Miami offices disclosed an interesting set of instructions to people who answered telephone calls to the Miami operation. The instructions were that employees were to mislead callers and not disclose any specific information about the company.  If a person called and asked where the company was located, they were told to say: "Our corporate office is located in Nevada.  (Only if asked further may you say that you are calling one of the call

22

centers in Florida.[)]"  (Hearing Ex. B.)  Employees were instructed explicitly as

follows:

> Absolutely NO information about our company is to be
> given to a non-customer.  If a person that is NOT a
> customer calls for information, take a name and number
> and advise the person that a supervisor will return their
> call.

(Id.)

Finally, that Mr. Smith has been ordered in the past to cease and desist from

making false representations in connection with attempted sales of yellow pages

advertising, further evidences that Messrs. Smith and Miller knew

misrepresentations of the kind alleged here were wrong and in developing their

advertising scheme their misrepresentations were made intentionally.  (Hood Decl.

Exs. 15, 16; Hearing Exs. 9-17.)

Based on its review and evaluation of the facts and Defendant's

representations as a whole, the Court concludes the USPS is likely to prevail in the

§ 3005 proceeding.[10]

---

[10]  To issue an injunction under § 3007, the Court is not required to consider
the traditional Rule 65 factors.  See U.S. Postal Serv. v. Beamish, 466 F.2d 804,
806 (3d Cir. 1972); 39 U.S.C. § 3007.  The Court notes the USPS has established
the remaining Rule 65 factors in this case.  The Defendant has contacted and

**III.    <u>CONCLUSION</u>**

For the reasons stated above, the Court finds that the USPS has a likelihood of success on the merits of the proceedings under 39 U.S.C. § 3005.  Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff USPS's Motion for Preliminary Injunction [5] is **GRANTED.**

**IT IS FURTHER ORDERED** that the United States Postal Service shall detain the Defendant's incoming mail addressed to:

> YELLOW PAGE PUBLISHERS
> and
> YELLOW PAGE DIRECTORY PUBLISHERS, INC.
> at
> 2870 Peachtree Road, Suite 157
> Atlanta, GA 30305-9847

---

sought "confirmation of listings" from hundreds, if not thousands, of businesses. Considering that Messrs. Miller and Smith substantially conduct their lives outside of this country and that Defendant's principal or "headquarters" offices are small at best, the Court believes there is significant risk any funds received by Defendant could be diverted out of the country or consumed, and thus would be unavailable to those who sent payments to Defendant.  This threatened irreparable injury outweighs any damage that might be caused by the detention of Defendant's mail. It certainly is in the broad public interest to enjoin this broad scheme directed toward businesses across the country.

24

YELLOW PAGE PUBLISHERS
and
YELLOW PAGE DIRECTORY PUBLISHERS, INC.
at
333 West North Avenue, Suite 102
Chicago, IL 60610-9641


YELLOW PAGE PUBLISHERS
and
YELLOW PAGE DIRECTORY PUBLISHERS, INC.
at
666 5th Avenue PMB 332
New York, NY 10102-0001


YELLOW PAGE PUBLISHERS
and
YELLOW PAGE DIRECTORY PUBLISHERS, INC.
at
264 S. La Cienega Blvd. Suite 1049
Beverly Hills, CA 90211-3302


YELLOW PAGE DIRECTORY PUBLISHERS
and
YELLOW PAGE DIRECTORY PUBLISHERS, INC.
at
10573 West Pico Blvd. PMB 335
Los Angeles, CA 90064-2333

during the pendency of the administrative proceedings under 39 U.S.C. § 3005 and

any judicial review thereof.

**IT IS FURTHER ORDERED** that the detained mail may be examined by Defendant under the supervision of the United States Postal Service and that such detained mail as is clearly not related to the alleged unlawful activity or which represents requests for refunds shall be delivered to Defendant.

**SO ORDERED**, this 14th day of March, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE